UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC W. WRIGHT,

    Plaintiff,                                                    Civil Action No. 10-13554

v.                                                               HON. DAVID M. LAWSON
                                                                 U.S. District Judge

COMMISSIONER OF SOCIAL                 HON. R. STEVEN WHALEN
SECURITY,                                                   U.S. Magistrate Judge

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Eric W. Wright brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be DENIED, and that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case be remanded for further administrative proceedings.[1]

---

[1] Transcript pages 231 through 334 were at some point "reduced" to the extent that they are almost unreadable, requiring a time-consuming on screen "zoom" of each page or the use of magnifying device for the printed copy. Deciphering these records required significant resources. The Commissioner need only have "zoomed" these documents *before* placing them in the transcript to make them readable. At a minimum, the submission of these pages in their present form violates the spirit of Defendant's obligations under the third sentence of Section 405(g)("[T]he Commissioner of Social Security shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based"). *See also Pierce v. Apfel*, 173 F.3d 704, 708 (8th Cir. 1999)("Unreadable records are of no value to the ALJ, the Commissioner, the district court, or this court. It is the responsibility of the Commissioner to make sure that a complete, readable, medical record is available to all parties").

**PROCEDURAL HISTORY**

On April 6, 2007, Plaintiff filed applications for SSI and DIB, alleging disability as of March 15, 2005 (Tr. 111-113, 114-117). After the initial denial of the claims, Plaintiff filed a request for an administrative hearing, held on November 18, 2009 in Chicago, Illinois before Administrative Law Judge ("ALJ") Theodore Grippo (Tr. 9). Plaintiff, represented by attorney Donald Shiffman, testified by teleconference (Tr. 12-25). Vocational Expert ("VE") Jennifer Turecki also testified (Tr. 26-28). On March 23, 2010, ALJ Grippo found that Plaintiff was not disabled (Tr. 46-48). On August 23, 2010, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the Commissioner's decision on September 7, 2010.

**BACKGROUND FACTS**

Plaintiff, born October 23, 1967, was 42 when the ALJ issued his decision (Tr. 126). He completed eleventh grade and worked previously as maintenance worker and tow truck operator (Tr. 150, 160). His application for benefits alleges disability as a result of a bipolar disorder, depression, arthritis of the left knee, and anxiety (Tr. 149).

A.   **Plaintiff's Testimony**

Plaintiff testified that he was 6'2", 256 pounds, and right-handed (Tr. 12). He reported leaving school in the middle of 12th grade, adding that he was a "poor" student because of Attention Deficit Disorder ("ADD") (Tr. 12-13). He indicated that his former work as a tow truck driver required "lots of lifting and pushing" (Tr. 13). He reported that his maintenance jobs also required heavy lifting (Tr. 13).

Plaintiff alleged that both physical and psychological conditions prevented him from working (Tr. 14). Noting that he had undergone cervical spine surgery, Plaintiff reported that he experienced

ongoing neck pain (Tr. 14-15). He also alleged lower back, left knee, and right ankle pain, adding that he had undergone lumbar back and knee surgery following a motorcycle accident (Tr. 15-16). He testified that treating sources had informed him that he would eventually need a knee replacement (Tr. 17). He reported that prescribed pain medication caused drowsiness (Tr. 17).

Plaintiff alleged that he could sit for a maximum of 30 minutes and stand for 45 before requiring a position change due to neck, back, and leg pain (Tr. 18). He stated that he was "barely" able to walk one city block and was unable to lift more than five pounds (Tr. 19). Plaintiff reported that he was "an insulin dependent diabetic," adding that he also took medicine for hypertension and asthma (Tr. 19). He reiterated that his prescribed medication caused drowsiness (Tr. 19-20).

As to psychological impairments, Plaintiff reported that he experienced a bipolar disorder, ADD, paranoia, depression, and problems getting along with others (Tr. 20). He testified that he currently saw a psychologist once a month as well as a psychiatrist once every three months for a medication review (Tr. 21). Plaintiff reported that his prescribed medication (29-32 pills every day) had caused an enlarged liver (Tr. 19, 21).

Plaintiff reported that he currently lived with his girlfriend and their two children, alleging that his girlfriend did "most of everything" and that he spent his waking hours sitting in a recliner with his feet elevated to waist height (Tr. 22). Plaintiff alleged that various medications caused him to nod off for "at least" 30 to 40 minutes three or more times every day (Tr. 22). Plaintiff opined that he was unable to perform any work, noting that ADD prevented him from sitting in "one place for more than . . . five or ten minutes" (Tr. 23). In response to questioning by his attorney, Plaintiff stated that his children were placed in daycare while his girlfriend was at work (Tr. 24).

**B.     Medical Evidence**

**1. Treating Sources[2]**

January, 2005 imaging studies of the chest were unremarkable (Tr. 256). The same month, Plaintiff, reporting a rib injury, sought emergency treatment (Tr. 337). Imaging studies of the left knee were negative for fractures (Tr. 257). In December, 2005, Plaintiff reported extremity numbness (Tr. 273).

A January, 2006 MRI showed disk protrusion at C5-C6 and C6-C7 (Tr. 350, 414). In February, 2006, fusion surgery at C5-C6 was performed without complications (Tr. 344, 397). The same month, Plaintiff underwent arthroscopic surgery to the left knee (Tr. 362). Safwan A. Saker M.D. noted that Plaintiff's mood was stable (Tr. 352). Also in January, 2006, a psychiatric intake assessment noted that Plaintiff reported depression and feelings of helplessness (Tr. 812). He was assigned a GAF of 35[3] (Tr. 812). Treating notes indicate that he received treatment on a regular basis through at least October, 2009 (Tr. 788-810).

In April, 2006, a stress test was unremarkable, but Plaintiff was diagnosed with coronary artery disease and diabetes (Tr. 260). Treating notes state that Plaintiff underwent a cardiac catheterization without complications (Tr. 277). Imaging studies of the heart were unremarkable (Tr. 280). In June, 2006, Plaintiff was discharged from drug and alcohol rehabilitation (Tr. 341-

---

[2]Treatment records for conditions unrelated to Plaintiff's claim for DIB have been reviewed in full, but are omitted from discussion.

[3] A GAF score of 31-40 indicates "some impairment in reality testing or communication OR major impairment in several areas such as work, school, family relations, judgment, thinking or mood." *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR*)(4th ed. 2000).

342). He was assigned a GAF of 45[4] (Tr. 342). The same month, Lucia Zamorano, M.D., noting good results from the February, 2006 cervical spine surgery, found that because physical therapy for lower back issues had been unsuccessful, lumbar surgery was appropriate (Tr. 378). Imaging studies of the cervical spine were unremarkable (Tr. 403, 405). In July, 2006, decompression surgery at L4, L5, L6 was performed without complications[5] (Tr. 346, 392, 394).

In September, 2006, an MRI of the right knee was unremarkable (Tr. 474). In October, 2006, Plaintiff underwent a second left knee arthroscopy (Tr. 357). November, 2006 treating notes state that the knee was healing well (Tr. 363). In December, 2006, imaging studies of the lumbar spine were negative for fracture or compression (Tr. 271). A stress test performed the same month was unremarkable (Tr. 531).

In February, 2007, an MRI of the lumbar spine showed "multiple lesions throughout the lumbar spine and pelvis, suspicious of metastatic disease" (Tr. 400, 438). A followup bone scan was recommended (Tr. 400, 438). The same month, John G. Makris, M.D. noted that Plaintiff experienced poor memory and concentration (Tr. 563). Imaging studies of the thoracic and lumbar spines performed the following month were unremarkable (Tr. 422). The same month, bone scans, showing abnormalities consistent with "an old trauma," were otherwise unremarkable (Tr. 423, 446, 459, 537, 545). Imaging studies of the lumbar spine, chest, liver, and spleen were essentially normal (Tr. 539, 541). In October, 2007, a stress test showed unremarkable results (Tr. 492). In November,

---

[4]A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* ) (4th ed.2000).

[5]Although operative records include Plaintiff's name, the patient is described as a 58-year old woman (Tr. 346, 394).

2007, a Doppler study of the lower extremities was unremarkable (Tr. 484). Imaging studies also showed the absence of a deep vein thrombosis (Tr. 488). The same month, a bone scan was negative for "the presence of metastatic process" (Tr. 485). An echocardiogram showed "trace" mitral valve and tricuspid valve insufficiency but otherwise normal results (Tr. 486). A chest x-ray was normal, resolving concerns of suspected pneumonia (Tr. 653, 658). Imaging studies of the cervical spine were also unremarkable (Tr. 663).

March, 2008 imaging studies of the lumbar spine and left knee were unremarkable aside from degenerative changes (Tr. 647). A May, 2008 stress test yielded normal results (Tr. 621). In June, 2008, Plaintiff underwent a third left knee arthroscopy, followed by complications (Tr. 710, 727). In August, 2008, imaging studies of the lumbar spine showed spondylosis at L3-L4 without bulging and "mild spondylosis "with a small central disc protrusion and bulge" at L4-L5 (Tr. 670). The same month, a bone scan was unremarkable (Tr. 684). Imaging studies of the kidneys showed normal results (Tr. 690). In October, 2008, a somatosensory evoked potential study of the lower extremities showed "early diabetic peripheral neuropathy" (Tr. 681, 783). December, 2008 imaging studies showed "no active cardiac or lung disease" (Tr. 772).

A July, 2009 MRI of the left knee showed the presence of a osteochondral lesion (Tr. 736). The same month, imaging studies showed no evidence of deep vein thrombosis (Tr. 742). A Doppler study of the lower extremities was likewise normal (Tr. 744). In November, 2009, Dr. M. Rosenberg, noting that he had treated Plaintiff since 1998, found severe workplace limitations as a result of neuropathy and back problems (Tr. 607). He noted that Plaintiff's conditions were "exacerbated by any physical activity" (Tr. 607). He found that Plaintiff was capable of "low stress jobs" limited by the need to change positions frequently and stand for only 15 minutes at a time (Tr.

608). Dr. Rosenberg found that Plaintiff was restricted to lifting less than 10 pounds on an occasional basis and performing postural activities on a rare basis (Tr. 609-610). He opined that Plaintiff was not a malingerer (Tr. 608).

The same month, treating psychologist Wendy Hayek, noting Plaintiff's history of bipolar disorder and depression, found that he was "seriously limited but not precluded" from working by deficiencies in maintaining attention for extended periods, working with coworkers, and completing a normal workday without psychologically based interruptions. She opined that he was otherwise capable of "limited but satisfactory" work (Tr. 613-614). She found that Plaintiff was not a malingerer (Tr. 615).

### 2. Consultive and Non-Examining Sources

On February 15, 2008, Kamal Nangia M.D. performed a consultive physical examination on behalf of the SSA (Tr. 572-582). Plaintiff reported chronic left knee pain since sustaining injuries in a motorcycle accident 20 years earlier (Tr. 572). Imaging studies of the left knee were unremarkable (Tr. 576). He alleged back pain and foot numbness, noting further that he had been hospitalized the previous year due to diabetes related symptoms (Tr. 572). Dr. Nangia noted that Plaintiff had undergone a lumbar laminectomy in 2006 (Tr. 573). Plaintiff exhibited normal muscle tone and did not require an assistive device (Tr. 574). His gait was normal and he did not show signs of diabetic retinopathy (Tr. 575). Range of motion studies were normal (Tr. 577-578). Plaintiff exhibited normal manipulative abilities and reflexes (Tr. 579).

The same day, Plaintiff underwent a consultive psychological examination on behalf of the SSA (Tr. 583-587). Plaintiff reported a history of depression and former drug and alcohol abuse, but noted that since undergoing treatment, his moods had stabilized (Tr. 583). Plaintiff reported

taking care of his children when his girlfriend was at work (Tr. 584). Psychiatrist F. Qadir, M.D. noted that Plaintiff appeared "older than his stated age" with "no motivation" and poor self-esteem (Tr. 584). Plaintiff did not exhibit memory or other cognitive problems (Tr. 584-585). Dr. Qadir assigned Plaintiff a GAF of 50 (Tr. 585).

The same month, a Psychiatric Review Technique performed by Edward Czarnecki, Ph.D. found the presence of organic mental disorders, an affective disorder (depression), and substance addiction disorders (Tr. 591, 592, 594, 599). Under the "B Criteria," Plaintiff was found to experience mild limitations in activities of daily living and social functioning and moderate deficiencies in concentration, persistence, or pace (Tr. 601). Dr. Czarnecki noted average intelligence, a wide range of daily activities (including child care) and recovery from substance abuse (Tr. 603). A Mental Residual Functional Capacity Assessment found that Plaintiff experienced moderate deficiencies in the ability to understand, remember, and carry out detailed instructions or maintain attention for extended periods (Tr. 604). Dr. Czarnecki also noted moderate deficiencies in the ability to interact with the general public and respond appropriately to changes in the work setting (Tr. 605). He found that Plaintiff "retain[ed] the mental capacity to sustain an independent routine of simple work activity, noting that "mental functions including memory, attention and concentration [were] not impaired" (Tr. 606).

### C.  Vocational Expert Testimony

VE Turecki classified Plaintiff's former jobs as a tow truck driver as semiskilled and exertionally medium and maintenance worker as semi-skilled and heavy[6] (Tr. 26). She testified that

---

[6] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of

-8-

if Plaintiff were limited to "simple" work, he would be unable to perform any past relevant work ("PRW"), but could work as a hand packer (5,000 medium/unskilled positions in the regional economy); laundry worker (3,000 medium/unskilled); sorter (4,000, light/unskilled); inspector (3,000, light/unskilled); bench assembler (3,000, sedentary/unskilled); and plastic sorter (1,500, sedentary/unskilled) (Tr. 26-27). The VE found that if the testimony regarding physical and psychological limitations were fully credited, Plaintiff would be unable to perform any work (Tr. 27-28). VE Turecki stated that her testimony was not inconsistent with the information found in the *Dictionary of Occupational Titles* ("DOT")(Tr. 28).

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ Grippo found that Plaintiff experienced the "severe" impairments of "affective disorder, anxiety disorder, learning disorder in mathematics, alcohol dependence in remission, and marijuana dependence in remission" but that none of the conditions met or medically equaled an impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 38, 41). The ALJ determined further that Plaintiff experienced the non-severe impairment of "spinal disorder, resolved with surgery; knee disorder, resolved with surgery; and, diabetes mellitus" (Tr. 38, 40).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for medium work, limited to "simple tasks" (Tr. 43). Citing the VE's job findings, the ALJ concluded that Plaintiff was unable to perform his PRW but could work as a hand packer, laundry worker, sorter, inspector, bench assembler, and plastic sorter (Tr. 48).

---

objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

The ALJ discounted Plaintiff's allegations of disability (Tr. 45). He observed that Plaintiff's testimony that he was unable to lift more than five pounds or walk more than one block was contradicted by earlier statements that he could lift 25 pounds and walk for one-quarter mile (Tr. 45). The ALJ noted that Plaintiff was independent in all self care activities and continued to drive and shop (Tr. 45). The ALJ gave "substantial weight" to Dr. Hayek's finding that Plaintiff had a "'limited but satisfactory'" ability to perform simple and semi-skilled work (Tr. 45).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. The Hypothetical Question

Plaintiff argues first that the hypothetical question posed to the VE did not account for his full degree of limitation. *Plaintiff's Brief* at 6-11, *Dock. #10.* He contends that merely limiting him to "simple work" did not fully reflect the findings by either his treating psychologist or the Psychiatric Review Technique. *Id.* He argues in effect that the failure to include all of his relevant psychological limitations in the question to the VE invalidates the findings that he could perform the work of a hand packer, laundry worker, worker, inspector, bench assembler, or sorter. Id.

A hypothetical question constitutes substantial evidence only if it accounts for the claimant's physical and mental impairments. *Varley v. Commissioner of Social Security,* 820 F.2d 777, 779 (6th Cir. 1987). In *Webb v. Commissioner of Social Sec.*, 368 F.3d 629 (6th Cir.2004), while rejecting the notion that an ALJ is required to list all of a claimant's maladies verbatim in the hypothetical question, nonetheless acknowledged that "[t]he hypothetical question ... should include an accurate portrayal of [a claimant's] individual physical and mental impairments." (internal citations omitted) *Id.* at 632 (citing *Varley,* 820 F.2d at 779 (6th Cir. 1987)).

The ALJ, drawing on both treating and non-examining sources, reasonably found that Plaintiff experienced moderate limitations in concentration, persistence, and pace (Tr. 41). Substantial evidence, in the form Dr. Hayek's treating assessment and Dr. Czarnecki's non-examining assessment, easily supports this finding. So far, so good. However, by omitting all reference to psychological problems other than to limit Plaintiff to "simple tasks," the hypothetical question did not adequately account for "moderate" deficiencies in concentration, persistence, and pace.

The failure to account for moderate concentrational deficiencies in the hypoethetical question constitutes reversible error.  While the ALJ need not use talismatic language or include the phrase "moderate deficiencies in concentration, persistence, and pace" in the hypothetical to avoid remand, *see Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001), "unskilled work," or "simple work" are generally insufficient to account for moderate concentrational impairments. *See Bankston v. Commissioner,* 127 F.Supp.2d 820, 826 (E.D.Mich.2000)(Zatkoff, J.); *Benton v. Commissioner of Social Sec.* 511 F.Supp.2d 842, 849 (E.D.Mich.,2007) (Roberts, J.); *Edwards v. Barnhart,* 383 F.Supp.2d 920, 931 (E.D.Mich.2005) (Friedman, J.); *Newton v. Chater,* 92 F.3d 688, 695 (8th

Cir.1996); *McGuire v. Apfel,* 1999 WL 426035, 15 (D.Or.1999); *Roe v. Chater,* 92 F.3d 672, 676–77 (8th Cir.1996). The "simple work" limitation, by itself, is insufficient to address moderate concentrational problems, *i.e.,* staying on task for an entire work shift, the timely completion of tasks, maintaining focus, or other workplace limitations associated with moderate deficiencies in concentration, persistence, and pace.

Moreover, although the ALJ stated that Dr. Czarnecki's findings were consistent with the medical evidence of record, the hypothetical question omits reference to Dr. Czarnecki's additional findings that Plaintiff experienced moderate deficiencies in interacting with the general public and responding appropriately to workplace changes (Tr. 605). Likewise, while the ALJ found that Dr. Hayek's opinion was allotted "substantial weight," he ignored her finding that Plaintiff was "significantly limited" in the ability to maintain attention for extended periods, work with coworkers, and complete a work schedule without psychologically based interruptions (Tr. 613-614). The ALJ did not so much adopt the findings of Czarnecki and Hayek as "cherry pick" the portions that supported a non-disability finding and ignore the rest. *See Laskowski v. Apfel,* 100 F.Supp.2d 474, 482 (E.D.Mich.2000)(Lawson, J.)(A non-disability finding "cannot be based on fragments of the record"). While the ALJ cited Dr. Qadir's consultive examination notes for the finding that Plaintiff experienced only mild or non-existent cognitive problems, Dr. Qadir's observations do not contradict either Dr. Czarnecki's or Hayek's opinion that Plaintiff would experience moderate concentrational or pacing deficiencies in a work setting.

Practically speaking, the ALJ's failure to account for Plaintiff's moderate concentrational and interpersonal deficiencies casts doubt on the VE's job findings. For example, the jobs of hand packer, sorter, bench assembler, and plastic sorter (presumably including quota requirements) would

be precluded or at least compromised by moderate concentrational and pacing problems. Similarly, limitations in working with the public and/or coworkers would potentially reduce or eliminate the positions of inspector or laundry worker. While I cannot speculate on precisely how the job findings would differ if the hypothetical question were amended to include all of Plaintiff's relevant limitations, it seems obvious that the VE's job numbers, given in response to an amended question, would be substantially reduced.

### B. The "Non-Severe" Impairments

Plaintiff also disputes the ALJ's step two finding that conditions of "a spinal disorder, knee disorder and diabetes mellitus" were "non-severe." *Plaintiff's Brief* at 11-17 (*citing* Tr. 40).

"[T]he second stage severity inquiry, properly interpreted, serves the goal of administrative efficiency by allowing the Secretary to screen out totally groundless claims." *Farris v. Secretary of HHS*, 773 F.2d 85, 89 (6th Cir. 1985). An impairment can be considered "not severe . . . only if the impairment is a 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.'" *Id.* at 90 (citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir.1984)).

Imaging studies created after the cervical and lumbar spine surgeries showing only mild abnormalities supports the ALJ's conclusion that the spinal condition was "non-severe" (Tr. 40, 378, 403, 405, 539, 541, 670). The ALJ's finding that diabetes mellitus did not create significant workplace limitations (standing at odds with Dr. Rosenberg's November, 2009 opinion) (Tr. 607) is a closer call, given that objective studies from the previous year showed "early diabetic peripheral neuropathy" (Tr. 722).

However, even assuming for the sake of argument that substantial evidence supports the above findings, the ALJ's determination that Plaintiff's left knee condition was "non-severe" is contradicted by the great weight of evidence. The ALJ cites a non-examining assessor's February, 2008 finding that the knee condition was non-severe (Tr. 40, 589). However, the non-examining assessor did not have benefit of June, 2008 records showing that Plaintiff underwent a *third* arthroscopic surgery on the left knee in three years (Tr. 710, 726). Although the ALJ cites a February, 2008 consultive observation that Plaintiff did not require a cane (Tr. 40, 574), more recent records show that Plaintiff once again required aggressive treatment to alleviate knee problems following the non-treating findings. While the ALJ's use of a non-examining opinion was not intrinsically improper, favoring older findings over more current ones may constitute reversible error. *See Hamblin v. Apfel*, 2001 WL 345798, *2 (6th Cir. 2001)(affirming an ALJ's rejection of a treating physician's "outdated" opinion on the basis that a consultive physician had performed a more recent appraisal with contradicting findings). The Sixth Circuit's holding favoring the use of updated medical information is even more applicable to the instant case, where the more recent records were created by treating sources and the older findings were made by a state-hired consultive physician. As such, the ALJ's flawed step two finding requires remand.

Finally, the Court must determine whether Plaintiff is entitled to a remand for further fact-finding or an award of benefits. The record contains at least two errors requiring remand for clarification or correction. At a minimum, the record strongly supports a more reduced residual functional capacity than that found by ALJ Grippo, as well as inclusion of Plaintiff's knee disorder as a substantial impairment at step two. However, because Plaintiff's proof of disability is not "overwhelming," I recommend that the case be remanded for further administrative proceedings

rather than an award of benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir.1994).

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be DENIED, and that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case be remanded for further administrative proceedings consistent with this Report.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                                  s/R. StevenWhalen
                                                                  R. STEVEN WHALEN
                                                                  UNITED STATES MAGISTRATE JUDGE

Dated: July 26, 2011

## CERTIFICATE OF SERVICE

I hereby certify on July 26, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on July 26, 2011: **None.**

>           s/Michael E. Lang
>           Deputy Clerk to
>           Magistrate Judge R. Steven Whalen
>           (313) 234-5217